# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CANDACE DYER BEY, | Civil Action No.: |
| Plaintiff, | |
| vs. | |
| ALLEGHENY COUNTY, CITY OF PITTSBURGH, VICTORIA HERSHBERGER, and CHRISTIAN HOLSTEIN | |
| Defendants. | |

## PLAINTIFF'S COMPLAINT

AND NOW, comes the Plaintiff, Candace Dyer Bey, by and through her undersigned counsel, Sara J. Watkins, Esquire, D. Aaron Rihn, Esquire, and the law firm of Robert Peirce & Associates, P.C., and claims damages of the Defendants and in support thereof, she states as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this action under the provisions of 28 U.S.C. §§ 1331, 1341, and 1343 because it is filed to obtain compensatory damages, punitive damages, and injunctive relief for the deprivation, under color of state law, of the rights of citizens of the United States secured by the Constitution and federal law pursuant to 42 U.S.C. §§ 1981 and 1983.

2. This Court has supplemental jurisdiction over Plaintiff's State Law claims, pursuant to 28 U.S.C. §1367.

3. This Court has personal jurisdiction over Defendants because Defendants reside and conduct business in the State of Pennsylvania.

4. Venue is proper under 42 U.S.C. §1391 as to all Defendants because the proposed site is located within this District, and the acts described herein occurred within this District.

**PARTIES**

5. Plaintiff, Candace Dyer Bey ("Ms. Dyer Bey") is an adult individual who resides at 434 Cedar Drive, Coraopolis, Pennsylvania 15108.

6. Defendant, Allegheny County, is a County of the second class, organized and existing under the laws of the Commonwealth of Pennsylvania with an office at 445 Fort Pitt Boulevard, Suite. 300, Pittsburgh, Pennsylvania 15219.

7. Defendant, City of Pittsburgh, is a Pennsylvania City of the second class under and existing pursuant to Pennsylvania Municipal Law with offices located at 313 City-County Building, Room 200, 414 Grant Street, Pittsburgh, Pennsylvania 15219.

8. Defendant Victoria Hershberger is an adult individual who was employed as an Identification Technician at the Pittsburgh Municipal Court Annex Building.

9. Defendant Christian Holstein is an adult individual who was employed as a Supervisor at the Pittsburgh Municipal Court Annex Building.

10. At all times and places herein referred to, Defendant, Allegheny County, and its agents, servants and/or employees, had under its ownership, maintenance and control, the Pittsburgh Municipal Court Annex Building located at 660 First Avenue, Pittsburgh, Allegheny County, Pennsylvania 15219, including Victoria Hershberger ("Ms. Hershberger") and Christian Holstein ("Mr. Holstein").

11. At all times and places herein referred to, Defendant, City of Pittsburgh and its agents, servants and/or employees, had under its ownership, maintenance and control the

Pittsburgh Municipal Court Annex Building located at 660 First Avenue, Pittsburgh, Allegheny County, Pennsylvania 15219, including Victoria Hershberger and Christian Holstein.

12. Upon information and belief, Defendant Victoria Hershberger is a Pennsylvania domicile, and therefore a citizen of Pennsylvania. Plaintiff will attempt to confirm Ms. Hershberger's address during discovery.

13. Upon information and belief, Defendant Christian Holstein is a Pennsylvania domicile, and therefore a citizen of Pennsylvania. Plaintiff will attempt to confirm Mr. Holstein's address during discovery.

## FACTS COMMON TO ALL CAUSES OF ACTION

14. Ms. Dyer Bey is a Muslim woman.

15. Ms. Dyer Bey wears a hijab pursuant to her Muslim faith.

16. In the Islamic faith, a hijab is a visible symbol of faith, religious devotion, and modesty. The Arabic word "hijab" derives from the word "hijaba," meaning to conceal from view or to cover. Wearing a hijab is also known as "covering."

17. For many Muslim women, the practice of covering entails wearing one's hijab at all times, whether at home or in public, when the wearer is in the presence of men who are not part of her immediate family.

18. For Muslim women who wear a hijab, including Ms. Dyer Bey, being forced to remove one's hijab is akin to a secular person being forced to strip naked. Men outside one's immediate family seeing a Muslim woman uncovered is deeply offensive and contrary to Islamic religious beliefs.

19. On October 31, 2024, Ms. Dyer Bey arrived at the Pittsburgh Municipal Courts Building, accompanied by her daughter Maquallah Bey, to comply with a fingerprinting order as mandated by her bail conditions.

20. Upon information and belief, the Pittsburgh Municipal Courts Building is under the control of both Defendants Allegheny County and the City of Pittsburgh.

21. Ms. Dyer Bey had a 7:20 p.m. appointment to complete this process and arrived at the Municipal Courts Building around this time.

22. Despite the charges against Ms. Dyer Bey being dropped, which were the subject of these conditions, she nonetheless felt compelled to adhere to the requirement of completing her fingerprinting. Ms. Dyer Bey had never been arrested but had rather received a citation in the mail.

23. When Ms. Dyer Bey was taken in for her appointment, County personnel began the booking process.

24. Ms. Dyer Bey was brought to an area where her identification photo was to be taken. This area had a partial door similar to a bathroom stall, but no ceiling. Individuals walking past from an upper awning could therefore see below into the area where Ms. Dyer Bey was to be photographed.

25. During Ms. Dyer Bey's booking process, Victoria Hershberger, an Identification Technician, told her to remove her "scarf" for her identification photo.

26. Upon information and belief, Ms. Hershberger is an employee of Defendant Allegheny County.

27. Ms. Dyer Bey informed Ms. Hershberger that she was not wearing a scarf, but a hijab, a piece of religious headdress. Ms. Dyer Bey informed Ms. Hershberger that her religious beliefs dictated she not remove it in public, and that she could not be photographed without it.

28. Ms. Hershberger informed Ms. Dyer Bey that policy required she remove her hijab for the photo despite her religious beliefs.

29. Ms. Dyer Bey asked Ms. Hershberger to provide a written policy confirming this requirement.

30. Ms. Hershberger did not produce such a written policy.

31. Ms. Dyer Bey called attention to a paper sign which required individuals to remove "head wraps and bandanas," explaining that these were different than her hijab which she wore as an element of her faith.

32. Ms. Hershberger indicated this posted policy required she remove her hijab.

33. Thereafter, Ms. Hershberger called her supervisor Christian Holstein.

34. Ms. Hershberger put Mr. Holstein on speaker phone so that Ms. Dyer Bey could speak with him.

35. Ms. Dyer Bey attempted to express her concerns to Mr. Holstein regarding her religious beliefs, and explained that being forced to remove her hijab would be highly offensive to her and would violate her religious convictions.

36. Ms. Dyer Bey again requested to view a written policy to support the demand to remove her hijab, this time to Mr. Holstein.

37. Mr. Holstein was dismissive of Ms. Dyer Bey's rights and expressed no sympathy or understanding for her religious beliefs. Mr. Holstein did not provide any written documentation to support the policy requiring Ms. Dyer Bey to remove her hijab.

38. Mr. Holstien told Ms. Dyer Bey that she could either remove the hijab or go to jail.

39. Mr. Holstein then informed Ms. Hershberger off speaker phone that she was to enforce the removal of Ms. Dyer Bey's hijab for her identification photo.

40. Ms. Hershberger also spoke on the phone with another supervisor while she was in the room with Ms. Dyer Bey. Upon information and belief, this supervisor also directed Ms. Hershberger to enforce the removal of Ms. Dyer Bey's hijab. Ms. Dyer Bey did not speak to this supervisor, and their identity is unknown to Plaintiff.

41. Ms. Hershberger then once again informed Ms. Dyer Bey she must remove her hijab.

42. Ms. Dyer Bey removed her hijab out of distress and fear of going to jail.

43. While Ms. Hershberger and Ms. Dyer Bey's daughter were the only individuals present in the "room" when she removed her hijab, as described above, this room offered little privacy.

44. Any individual walking along the upper awning would have a full view of Ms. Dyer Bey with her hijab removed.

45. Ms. Dyer Bey had her hijab removed for approximately two minutes.

46. She is unsure whether any man observed her uncovered since these men would have been above her, and she was highly emotionally distressed while her hijab was removed. However, Ms. Dyer Bey observed men walking on this balcony before and after her hijab was removed.

47. After Ms. Dyer Bey removed her hijab, Ms. Hershberger searched Ms. Dyer Bey's hijab.

48. This is despite Ms. Dyer Bey never being put in custody.

49. Further, no other reasonable basis existed to search Ms. Dyer Bey's hijab.

50. Her identification photo was then taken.

51. Defendants therefore photographed Ms. Dyer Bey, a Muslim woman, without her hijab.

6

52. No written policy or explanation of the policy was ever provided to Ms. Dyer Bey.

53. Ms. Dyer Bey was then allowed to put her hijab back on prior to being fingerprinted.

54. Ms. Dyer Bey left the Municipal Courts Building at approximately 9:00 p.m.

55. Defendants have created a permanent public record depicting Ms. Dyer Bey in a manner that is deeply contrary to her religious beliefs. On information and belief, Defendants still retain Ms. Dyer Bey's photograph depicting her without her hijab and have either released it to the public and/or Allegheny County Jail/ Pittsburgh Municipal Court internal systems and/or have made Ms. Dyer Bey's photograph accessible to others, including men outside of her immediate family.

56. Therefore, not only was Ms. Dyer Bey forced to remove her hijab on the date in question revealing her hair, ears, and neck to men outside her immediate family, a lasting image of her exists so exposed of which she is powerless to remove from existence.

57. The forced removal of Ms. Dyer Bey's hijab has caused her great emotional distress and great psychological pain.

    a. Ms. Dyer Bey's counselor has noted that the above described traumatic event has negatively impacted her psychiatric condition and emotional wellbeing in a number of ways.

    b. Ms. Dyer Bey's Depressive Disorder atypical and existing trauma issues have been exasperated.

    c. Ms. Dyer Bey has shown a significant increase of anxiety, depression, and decrease of self worth.

        d.      Ms. Dyer Bey has experienced increased anxiety regarding wearing her hijab.

## ALLEGHNY COUNTY JAIL'S BOOKING POLICIES

58. Up until May of 2025, Allegheny County Jail had a written or *de facto* policy or custom of requiring each individual booked to remove their religious headdress for their identification photo.

59. This policy was evidenced by a piece of paper taped to the wall next to the camera, reading, "please remove any and all face coverings, head wraps, ball caps, stockings, or bandanas before we take your photo. Thank you."

60. As a direct and proximate result of this policy or custom, Ms. Dyer's constitutional rights were violated, along with suffering psychological pain, humiliation, and mental anguish.

61. Following Ms. Dyer Bey's booking, she filed complaints with both the Pennsylvania Human Relations Commission, which is still pending, and the Pennsylvania Office of Attorney General's Civil Rights Enforcement Section.

62. The Office of the Attorney General found in Ms. Dyer Bey's favor and mandated the Allegheny County Bureau of Corrections rework its jail booking policies in response to the aforementioned events affecting Ms. Dyer Bey as detailed in its May 7, 2025 press release.

63. Under the new policy, the county will permit any arrestee to wear a religious head covering while taking their booking photo if the covering does not obstruct their face and profile, and head covering searches must now happen without individuals of the opposite sex present.

64. Regarding the policy change, Attorney General Sunday said, "This policy update is about upholding basic dignity while preserving religious freedoms for individuals . . . Many people wear religious head garments as a sincere tenet of their religious faith, and no one should

have to choose between their faith and their rights. I commend Allegheny County for working closely with my office to craft a policy that balances institutional safety with constitutional protections."

65. Unfortunately, this new constitutional policy was not in place during Ms. Dyer Bey's booking process.

66. Ms. Dyer Bey's hijab does not obstruct her face profile. She is easily identifiable while wearing her hijab.

**COUNT I**
**Plaintiff v. Defendants City of Pittsburgh and Allegheny County**
**Violation of the Constitutional Rights to Free Exercise of Religion and Protection against Unreasonable Search and Seizure Under Color of State Law and Failure to Implement Municipal Policies to Avoid Constitutional Deprivations Under Color of State Law**

67. All preceding paragraphs of this Complaint are incorporated herein, as if set forth more fully at length.

68. Under the First Amendment, Plaintiff has the right to freely exercise her religion.

69. The Fourth Amendment to the United States Constitution establishes that Plaintiffs have a right to be free from the deprivation of life, liberty, and bodily security without due process of law and to be free from unreasonable searches and seizures and excessive force.

70. 42 U.S.C. §1983 provides a vehicle for a private cause of action against state actors acting under color of state law who engage in activities that violate an individual's rights guaranteed by the United States Constitution or an amendment to the Constitution.

71. At all relevant times, Defendants were acting under color of state law.

72. Defendants deprived Ms. Dyer Bey of her right to freely exercise her religious beliefs by forcing her to remove her hijab in public, and photographing her without her hijab, both highly offensive to Ms. Dyer Bey's religious convictions.

9

73. Ms. Hershberger forced Ms. Dyer Bey to remove her hijab for her identification photo at the direction of her supervisors in accordance with Defendant Allegheny County and the City of Pittsburgh's policy or custom despite it not advancing any legitimate state interest. Photographing Ms. Dyer Bey without her hijab did not make a more accurate record of her appearance as she wears her hijab every day. Further, charges against Ms. Dyer Bey had been dropped; therefore, law enforcement did not have a substantial need to identify Ms. Dyer Bey.

74. The forced removal of the hijab was not a mere inconvenience or minor interference; it was a profound violation of Ms. Dyer Bey's sincerely held religious beliefs against appearing in public uncovered, along with being seen uncovered by men outside of her immediate family.

75. At all times relevant hereto, Defendants knew, or should have known, Muslim women often wear hijab as part of their religious practice and sincerely held religious belief.

76. This belief was expressed to Defendants by Ms. Dyer Bey.

77. At all times relevant hereto, Defendants knew, or should have known, it is highly offensive to force a Muslim woman to remove her hijab and photograph her uncovered.

78. Ms. Dyer Bey was forced to remove her hijab and was photographed without it as part of an unconstitutional policy or custom by Defendants which has since ceased at the direction of the office of the Attorney General in direct response to the events described in this Complaint.

79. This policy was enforced by Mr. Holstein, a supervisor of Ms. Hershberger who directed she carry it out.

80. Defendants, acting by and through their agents, violated Ms. Dyer Bey's Constitutional rights when they performed a search of her hijab after forcing her to remove it.

81. Defendants, acting by and through their agents, did not have any necessity or reasonable suspicion to perform a search.

82. The unlawful actions describe herein were conducted pursuant to the policy, custom, and/or practice of the Defendants City of Pittsburgh and Allegheny County.

83. Ms. Dyer Bey has sustained damages and has suffered,and continues to suffer, mental anguish, physical and emotional distress, humiliation, and embarrassment.

84. The existence of Ms. Dyer Bey's photo in law enforcement databases is likely to continue to harm to her without equitable relief.

WHEREFORE, due to Defendants' actions, Plaintiff's First Amendment rights were violated pursuant to 42 U.S.C. § 1983. Plaintiff respectfully requests this Honorable court award, exemplary, compensatory, and punitive damages plus costs and attorney fees as set forth in 42 U.S.C. §1988, along with equitable relief requiring the destruction of all copies of existing photographs of Ms. Dyer Bey.

## COUNT II
**Plaintiff v. Defendants Hershberger and Holstein**
**Violation of the Constitutional Rights to Free Exercise of Religion and Protection against Unreasonable Search and Seizure Under Color of State Law**

85. All preceding paragraphs of this Complaint are incorporated herein, as if set forth more fully at length.

86. Under the First Amendment, Plaintiff has the right to freely exercise her religion.

87. The Fourth Amendment to the United States Constitution establishes that Plaintiffs have a right to be free from the deprivation of life, liberty, and bodily security without due process of law and to be free from unreasonable searches and seizures and excessive force.

88. 42 U.S.C. §1983 provides a vehicle for a private cause of action against state actors acting under color of state law who engage in activities that violate an individual's rights guaranteed by the United States Constitution or an amendment to the Constitution.

89. At all relevant times, Defendants were acting under color of state law.

90. Defendants violated Ms. Dyer Bey's Constitutional rights when they performed a search of her hijab and forced her to remove it.

91. Defendants did not have any necessity or reasonable suspicion to perform a search.

92. Ms. Dyer Bey was not to enter custody of the jail and was not even presently charged with a crime. The only reason Ms. Dyer Bey was present at the Pittsburgh Municipal Courts Building was to comply with a condition of her bond; the charges of which were dropped.

93. Defendants' illegal and unconstitutional acts were the direct and proximate cause of Plaintiff's deprivation of their constitutional rights

WHEREFORE, due to Defendants' actions, Plaintiff's Fourth Amendment rights were violated pursuant to 42 U.S.C. § 1983. Plaintiff respectfully requests this Honorable court award, exemplary, compensatory, and punitive damages plus costs and attorney fees as set forth in 42 U.S.C. §1988.

**A JURY TRIAL IS DEMANDED.**

Dated: October 16, 2025                    Respectfully submitted,

By: */s/ Sara J. Watkins*
   SARA J. WATKINS, ESQUIRE
   PA I.D. No. 325770
   D. AARON RIHN, ESQUIRE
   PA I.D. No. 85752
   ROBERT PEIRCE & ASSOCIATES, P.C.
   437 Grant Street, Suite 1100
   Pittsburgh, PA 15219
   Tel: 412-281-7229

Fax: 412-281-4229
Email:   swatkins@peircelaw.com
         arihn@peircelaw.com

*Counsel for Plaintiff*